JAMES DANA & another *vs.* THIRD NATIONAL BANK IN BOSTON.

A check drawn upon a bank for more than the amount of the drawer's funds on deposit creates no lien upon and gives the payee no right to the actual balance, until the bank has agreed to pay it *pro tanto.*

CONTRACT brought by the assignees in insolvency of Patterson Brothers, to recover the sum of $1060.90, deposited with the defendants by said insolvent debtors.

At the trial in the superior court, before *Wilkinson*, J., it appeared that on Saturday, September 23d 1865, Patterson Brothers had on deposit with the defendants about $7000, and thereafter gave checks to various persons, amounting together to about $20,000, which reached the bank the following Monday, and were paid until the deposit was reduced to $1060.90, when the cashier found the remaining checks to be severally for larger amounts than the above balance, and on that account refused payment of any more of them. Amongst these unpaid checks was one of $4375, given to a broker for stock belonging to one Sohier, and purchased by Patterson Brothers of the broker on September 23d. On the return of this check unpaid, on September 25th, to the broker, the latter commenced an action thereon against Patterson Brothers, and summoned the bank as trustees ; but this action was not prosecuted. On the following

day, the broker delivered the check to Sohier, and they together demanded payment of the sum of $1060.90, offering to indorse the same on the check and leave it with the defendants as a voucher, but the defendants refused to pay it. The insolvency of Patterson Brothers was known to all parties on the 25th of September; and they subsequently went into insolvency, the first publication of notice being made on the 7th of October. The plaintiffs were appointed as assignees on the 17th of October, and on the following day demanded the money in controversy of the defendants, who refused to pay the same. On the 28th of October the defendants paid the money to Sohier, taking from him a bond of indemnity.

Upon these facts, the judge instructed the jury to return a verdict for the plaintiffs, which was accordingly done; and the defendants alleged exceptions.

*W. S. Dexter*, for the defendants, cited *Butler* v. *Breck*, 7 Met. 164; *Bourne* v. *Cabot*, 3 Met. 305; *Carnegie* v. *Morrison*, 2 Met. 381, 396; *Weston* v. *Barker*, 12 Johns. 276; *In the matter of Brown*, 2 Story R. 502, 519.

*H. G. Hutchins*, for the plaintiffs.

FOSTER, J. This is an action by assignees in insolvency against a bank, to recover the amount on deposit to the credit of the insolvent when the proceedings in insolvency were instituted, namely, October 7th 1865. The defence is payment of the balance of $1060.90, to the holder of a check for $4375, drawn September 23d, and presented for payment and dishonored September 25th. The next day the holder demanded payment of the actual balance, offering to indorse it on the check, and to leave that for a voucher. This was then refused. But on October 28th the bank did pay the amount on hand to the check-holder, taking indemnity from him.

We do not refer to the trustee process served on the bank, nor to the circumstances that many other checks were drawn, presented and dishonored at the same time with the one upon which payment was subsequently made. These facts cannot aid the case of the bank, and might of themselves present serious difficulties in the way of establishing the defence relied

upon, if it were not defeated upon other grounds. The question to be determined is, whether there was an equitable assignment of the balance on deposit in favor of the holder of the check. If he was entitled in any form to enforce the appropriation of the deposit for his benefit, then the payment by the bank, although subsequent to the proceedings in insolvency, was justifiable, and constitutes a defence to this action.

In *Bullard* v. *Randall*, 1 Gray, 605, it was held that a check for a part of the drawer's funds in a bank constitutes no assignment until presented for payment and accepted by the bank. " It was a draft on a bank at sight, for a fixed sum, payable out of a general deposit of the drawer, being a larger sum standing to his credit. Such an order is held not to be an assignment." If the present check had been for less instead of more than the amount upon deposit, that case would be an authority precisely in point; for equitable assignments are respected upon trustee process as fully as in proceedings in equity. In *Gibson* v. *Cooke*, 20 Pick. 15, it was held that an order upon a trustee by the *cestui que trust* to pay a sum larger than the amount of income in his hands when the order was made and presented, and not corresponding precisely with the amount payable on any one or more days when the instalments of income were to be paid, did not constitute any equitable assignment against the consent of the trustee. The result of this decision is to establish, what would seem to be clear on general principles, that the bank was under no obligation to pay a part of the check, when not possessed of funds sufficient to pay the whole.

In the present instance there was, at first, no consent, but a refusal, to pay on account of the check the balance to the credit of the drawer. And this refusal continued until after the commencement of proceedings in insolvency, when the rights of the assignees had intervened, and it was out of the power of the bank and the check-holder to make any arrangement to their prejudice. The two authorities from our own reports are, therefore, taken together, decisive against the theory that there was any equitable assignment in favor of the check-holder in the present case. And it becomes unnecessary to decide whether

a check drawn for the exact balance in a banker's hands is an equitable assignment thereof, with or without evidence that it was so intended by the parties.

It may be observed that bills of exchange and checks do not stand on the footing of orders drawn upon a particular fund with a manifested intention to create a lien thereupon , and that the tendency and preponderance of authorities seem in favor of the rule that neither a bill of exchange nor a check on a bank can operate as an assignment or appointment of the fund in the drawee's hands, or create any manner of lien upon it; in short, that the drawee owes no duty to the holder of either of these mercantile instruments previous to presentment and acceptance. This rule is supported by considerations of commercial convenience, and may be regarded as a corollary from the one, well established, that a bank having funds is liable in damages to a depositor for refusing to pay his check. It was said in *Gibson* v. *Cooke*, that " a draft by the creditor on his debtor in the form of a bill of exchange, to the amount of the debt or the whole fund in his hands, is a good and valid assignment of the debt or fund." But the remark, in the connection in which it stands, perhaps only means a draft on a particular fund; and, so qualified, it is undeniably correct.

It is enough now to hold that a check drawn upon a bank for more than the amount of the drawer's funds on deposit creates no lien upon and gives the payee no right to the actual balance, until the bank has agreed to pay it *pro tanto.*

*Exceptions overruled.*